UNITED STATES of America ex rel.
Melvin SANDERS 75551–158

v.

Floyd E. ARNOLD, Warden, Appellant.

No. 75–1080.

United States Court of Appeals,
Third Circuit.

Argued Oct. 16, 1975.

Decided May 14, 1976.

As Amended June 3, 1976.

Harry A. Nagle, Asst. U. S. Atty., Lewisburg, Pa., S. John Cottone, U. S. Atty., Scranton, Pa., Joseph F. Cimini, Asst. U. S. Atty., Lewisburg, Pa., for appellant.

John M. Humphrey, Candor, Youngman, Gibson & Gault, Williamsport, Pa., for appellee.

Before ALDISERT, KALODNER and ADAMS, Circuit Judges.

## OPINION OF THE COURT

KALODNER, Circuit Judge.

This appeal is from the district court's Order granting the habeas corpus petition of Melvin Sanders, an inmate of the federal penitentiary at Lewisburg, Pennsylvania. The district court, in an Opinion [1] accompanying its Order, held that the United States Board of Parole ("Board") had violated Sanders' due process rights and otherwise abused its discretion in reincarcerating Sanders for violation of his parole after it had granted him parole on a sentence imposed for a crime committed while he was on parole.

The facts relevant to our disposition may be summarized as follows:

On May 26, 1970, Sanders was sentenced to a three-year prison term for counterfeiting.

On August 16, 1971, Sanders was granted parole, after he had served 15 months of his three-year sentence.

On May 17, 1972, Sanders was sentenced to a 7½-year prison term for conspiracy to pass counterfeit money in the spring of 1972 when he was still on parole. The sentence, imposed by Judge Jack B. Weinstein,* provided that it was "to run concurrently with previously imposed sentence." Later, Judge Weinstein in a letter to the Board, dated April 5, 1973, stated that "it was my intention that the parole violation term and the term imposed be served concurrently."

On June 9, 1972, Sanders wrote, without avail, to the Board requesting a parole violation revocation hearing (Exhibit D).

On June 12, 1972, the Board lodged a detainer, in the form of a parole violator's warrant, against Sanders, with the Warden of the Lewisburg Penitentiary, where Sanders was incarcerated pursuant to Judge Weinstein's sentence.

On April 10, 1974, Sanders filed with the Federal Bureau of Prisons an "Inmate[s] Request for Administrative Remedy" (Exhibit C) which asserted that the detainer was invalid by reason of the concurrent provisions of Judge Weinstein's sentence. The "Request" was denied on April 16, 1974. On April 19, 1974, he filed an "Appeal" (Exhibit B) with the Bureau of Federal Prisons which was denied May 15, 1974.

On August 26, 1974, the Board issued a "Notice of Action" (Exhibit E) to Sanders which informed him that he had been granted "Parole September 18, 1974 to actual physical custody of detainer only." The "Notice of Action," which was served on Sanders on September 3, 1974, stated, under the caption "Appeals procedure"— "You have a right to appeal . . . within thirty days of the date this Notice was sent."

On September 6, 1974, the Board issued a Certificate of Parole which provided that Sanders was to be paroled on September 18, 1974 on Judge Weinstein's sentence. The Certificate stated that the Board had found that Sanders "is eligible to the PAROLED, and that there is a reasonable probability that he WILL REMAIN AT LIBERTY WITHOUT VIOLATING THE LAWS and . . . that the release of this person is not incompatible with the welfare of society . . ."

On September 18, 1974, Sanders was paroled on his second sentence, and the parole violator's warrant was simultaneously executed, pursuant to the "Notice of Action" of August 26, 1974.

On September 20, 1974, Sanders filed a habeas corpus petition challenging his continued incarceration on the ground that Judge Weinstein's concurrent sentence was valid, and accordingly the balance of the term of his first sentence had been served during his imprisonment under the intervening sentence.

---

1. The district court's opinion, filed December 6, 1974, is unreported.

* United States District Court, Eastern District of New York.

On October 10, 1974, Sanders moved to amend his petition by including an allegation that the Board's delay in holding a parole revocation hearing was so unreasonable as to constitute denial of due process. Permission to so amend the petition was later granted by the court.

On October 22, 1974, the Board held a revocation hearing with respect to Sanders' parole on his first sentence, and the same day revoked that parole.

On October 29, 1974, Sanders moved to amend his habeas corpus petition by including an allegation that the Board's October 22, 1974 revocation of his first sentence parole was so inconsistent with its prior granting of parole on his second sentence as to constitute denial of due process.

On December 6, 1974, the district court, without hearing, granted Sanders' petition on the ground that he was illegally detained as a parole violator. In doing so, it held that (1) the Board abused its discretion when it "ignore[d]" the fact that the 7½-year sentence imposed by Judge Weinstein provided that it was "to run concurrently with previously imposed sentence"; and (2) the action of the Board in revoking the parole granted Sanders on his first sentence after it had granted him parole on his second sentence was so "inconsistent" as to constitute "arbitrary and capricious" conduct violative of due process.[2]

On this appeal the Government challenges the district court's holdings that the Board abused its discretion and further violated Sanders' due process right in revoking the parole granted him on his first sentence. It urges that a sentencing judge (Judge Weinstein) does not have the power to require the Board to run a subsequently imposed parole violator's term concurrently with the sentence imposed by the judge, and that the action of the Board in revoking an earlier parole after paroling a prisoner from an intervening sentence is not inconsistent and does not amount to arbi-trary and capricious conduct violative of due process.

■ We do not reach the Government's stated challenges for this reason:

A federal prisoner cannot challenge a parole decision of the United States Board of Parole in a habeas corpus proceeding until he has exhausted available administrative remedies for review of the Board's decision. Otherwise stated, a federal prisoner must exhaust available administrative remedies before seeking habeas corpus relief.

■ Here, Sanders failed to exhaust his available administrative remedies with respect to (1) the Board's execution of its parole violation warrant on September 18, 1974, and (2) the Board's revocation of Sanders' first sentence parole on October 22, 1974.

The Board's "Notice of Action" of August 26, 1974, which informed Sanders that he was to be paroled on his second sentence on September 18, 1974 "to actual physical custody of detainer only," specifically advised Sanders that "[y]ou have a right to appeal . . . within 30 days." Sanders did *not* exercise his right to appeal. Instead, he filed his habeas corpus petition on September 20, 1974, prior to the expiration of the 30-day period.

Again, Sanders did *not* appeal from the Board's revocation of his first sentence parole on October 22, 1974 albeit he had an administrative remedy of appeal pursuant to the Board's Regulations.[3] It must be noted parenthetically that the district court granted Sanders' motion of October 29, 1974 to amend his petition to include a challenge to the Board's October 22, 1974 revocation of his first sentence parole, prior to the expiration of the 30-day period available for appeal from the revocation.

Sanders' failure to exhaust his available administrative remedies required the district court to dismiss his habeas corpus petition. The district court erred in failing to

---

**2.** The district court did not rule on Sanders' further contention that his due process rights were violated by the Board's alleged unreasonable delay between the lodging of its detainer parole violator warrant and the holding of the Board's parole revocation hearing.

**3.** 28 C.F.R. § 2.56, incorporating §§ 2.25–2.27.

deny the petition and it compounded its error in granting it.

This Court has in the recent past applied the exhaustion doctrine in habeas proceedings brought by federal prisoners.

We did so in *Grant v. Hogan,* 505 F.2d 1220 (1974), where a federal prisoner, via a habeas petition, challenged a detainer lodged against him under the Interstate Agreement on Detainers, 18 U.S.C.A. App. Article III, and *Soyka v. Alldredge,* 3 Cir., 481 F.2d 303 (1973), where a federal prisoner, via a habeas petition, sought credit against sentence for time spent in confinement prior to sentencing.

We have also applied the exhaustion doctrine in mandamus proceedings brought by federal prisoners. *Waddell v. Alldredge,* 3 Cir., 480 F.2d 1078 (1973), and *Green v. United States,* 3 Cir., 283 F.2d 687 (1960).

Other circuits are in accord. *Burnett v. United States Board of Parole,* 491 F.2d 966 (5th Cir.1974); *Smoake v. Willingham,* 359 F.2d 386 (10th Cir.1966); *United States ex rel. Jacobs v. Barc,* 141 F.2d 480 (6th Cir.), *cert. denied,* 322 U.S. 751, 64 S.Ct. 1262, 88 L.Ed. 1581 (1944).

It is pertinent to note that Chief Judge Sheridan of the Middle District of Pennsylvania in *Talerico v. Warden, U.S. Penitentiary,* 391 F.Supp. 193, 195 (1975) squarely ruled that a federal prisoner must exhaust available administrative remedies before seeking habeas corpus relief from an adverse parole decision of the United States Board of Parole.

The vitality of the exhaustion doctrine in habeas proceedings is attested to by the following statement in *Schlesinger v. Councilman,* 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975), at pages 756–757, 95 S.Ct. at 1312, 43 L.Ed.2d at 608:

> "To some extent, the practical considerations supporting both the exhaustion requirement in habeas corpus and the federal equity rule barring intervention into pending state criminal proceedings except in extraordinary circumstances are similar to those that underlie the requirement of exhaustion of administrative remedies.

*E.g., Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51 [58 S.Ct. 459, 463–464, 82 L.Ed. 638] (1938). The latter rule, looking to the special competence of agencies in which Congress has reposed the duty to perform particular tasks, is based on the need to allow agencies to develop the facts, to apply the law in which they are peculiarly expert, and to correct their own errors. The rule ensures that whatever judicial review is available will be informed and narrowed by the agencies' own decisions. It also avoids duplicative proceedings, and often the agency's ultimate decision will obviate the need for judicial intervention. *E.g., McKart v. United States,* 395 U.S. 185, 194–195 [89 S.Ct. 1657, 1662–1663, 23 L.Ed.2d 194] (1969); *Parisi v. Davidson,* 405 U.S. 34, 37 [92 S.Ct. 815, 817, 31 L.Ed.2d 17] (1972)."

There remains this to be said with reference to Sanders' statements in his Brief concerning the Board's "Notice of Action" of August 26, 1974. They are correct in noting that the Government incorrectly stated in its Brief that the Notice was included in the Government's Appendix. They are incorrect insofar as they inexplicably state "no such document was before the Honorable Malcolm Muir when he rendered his Opinion and Order dated December 6, 1974 granting Appellee habeas corpus relief."

The record below discloses that the "Notice of Action" was attached to Sanders' habeas petition and therein marked by him as "EX–E" in that portion of the petition which specifically noted that "the Petitioner was paroled to the actual physical custody of the detainer only."

For the reasons earlier stated, the cause will be remanded to the district court with directions to deny the petition for habeas corpus for failure to exhaust available administrative remedies.

ADAMS, Circuit Judge (dissenting).

Justice Holmes once lamented that "[i]t is one of the misfortunes of the law that ideas become encysted in phrases and thereafter

852

for a long time cease to provoke further analysis."[1] The doctrine of exhaustion of administrative remedies, although expressive of what is usually a salutary division of responsibility in our governmental system, may have fallen victim to Holmes' fear. In simply adopting the general rule of exhaustion as the ground for today's decision,[2] the majority has, in my view, failed to demonstrate that the basic reasons for requiring exhaustion have any applicability to Sanders' petition for habeas corpus. Because I believe that the purposes undergirding the doctrine of exhaustion are not furthered in this case, I respectfully dissent.

It is now settled that a party ordinarily is not "entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted."[3] I have no quarrel with this precept

as a general guideline.[4] It was originally established by the courts of equity,[5] and as Judge Rosenn recently stated, "[a]s with most judicially created doctrines, there are judicially created exceptions."[6] The cases make it clear that the doctrine will not be applied: (1) if the administrative remedy is inadequate, or will either cause or fail to prevent irreparable harm;[7] (2) when agency involvement "clearly and unambiguously violates statutory or constitutional rights,"[8] or (3) when pursuit of the administrative remedy would be futile.[9]

These exceptions to the precept make it evident that the exhaustion doctrine is in no sense an absolute. Rather, "the essence of [the doctrine] is *flexibility* and not [its] blind application . . . in every case."[10] And the courts have discretionary power to choose not to require exhaustion.[11]

1. *Hyde v. United States,* 225 U.S. 347, 391, 32 S.Ct. 793, 811, 56 L.Ed. 1114, 1135 (1912) (Holmes, J., dissenting).

2. *Cf.* Holmes' aphorism: "General propositions do not decide concrete cases." *Lochner v. New York,* 198 U.S. 45, 76, 25 S.Ct. 539, 547, 49 L.Ed. 937, 949 (1905).

3. *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638, 644 (1938).

4. Indeed, as I stated several years ago, speaking on behalf of the Court in a situation in which exhaustion had been mandated by statute, the "rule regarding the requirement of exhaustion of remedies is clear—when Congress has provided an administrative procedure which is capable of resolving a controversy such procedure must be utilized. It is only after the final administrative decision that the aggrieved parties may invoke the jurisdiction of the courts . . . ." *Government Employees Local 1904 v. Resor,* 442 F.2d 993, 994 (3d Cir.1971). *See* L. Jaffe, Judicial Control of Administrative Action 424 (1965).

5. *Smith v. United States,* 199 F.2d 377, 381 (1st Cir.1952). Exhaustion of administrative remedies is now required by statute in some circumstances. *See e.g.,* 30 U.S.C. § 816(a) (1970) (exhaustion required prior to judicial consideration of petition involving violation of federal coal mine health and safety standards); 42 U.S.C. § 2000e–5 (Supp.IV, 1974) (exhaustion required before employment discrimination charges may be filed by an individual in federal

district court). We are confronted today, of course, with a judicially created exhaustion-of-remedies situation.

6. *Barnes v. Chatterton,* 515 F.2d 916, 920 (3d Cir.1975).

7. *Renegotiation Bd. v. Bannercraft Clothing Co.,* 415 U.S. 1, 24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123, 139 (1974); *Barnes v. Chatterton, supra* at 920; *In re Central R.R.,* 485 F.2d 208, 225 (3d Cir.1973) (Aldisert, J., dissenting), *cert. denied,* 414 U.S. 1131, 94 S.Ct. 870, 38 L.Ed.2d 755 (1974); *Government Employees Local 1904 v. Resor,* 442 F.2d 993, 994–995 (3d Cir.1971); K. Davis, Administrative Law Treatise § 20.07 (1958); L. Jaffe, *supra* note 4, at 426.

8. *Barnes v. Chatterton, supra* at 920.

9. *In re Central R.R., supra* at 225 (Aldisert, J., dissenting); *United States ex rel. Marrero v. Warden,* 483 F.2d 656, 659 (3d Cir.1973), *rev'd on other grounds,* 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974); K. Davis, *supra* note 7, § 20.07, at 99–100; L. Jaffe, *supra* note 4, at 446–68.

When exhaustion is required by statute, *see* note 5 *supra,* the exceptions do not avail.

10. *United States ex rel. Brooks v. Clifford,* 412 F.2d 1137, 1138 n.1 (4th Cir.1969) (emphasis in original).

11. *NLRB v. Marine & Shipbuilding Workers,* 391 U.S. 418, 426 n.8, 88 S.Ct. 1717, 1722, 20

Keeping the flexible contours of the exhaustion doctrine in mind, reference should be made to its purposes in order to assess whether it is appropriate to insist on exhaustion in a given situation. As the Supreme Court has succinctly stated, "[a]pplication of the doctrine to specific cases requires an understanding of its purposes and of the particular administrative scheme involved." [12]

The courts have advanced several justifications for ruling that litigants usually must exhaust administrative remedies. Perhaps most critical is facilitation of judicial review, by allowing the agency to develop a factual record and by receiving the benefit of the agency's expertise in its own field. The doctrine also reflects an interest in efficiency and a desire to avoid piecemeal appeals by forcing parties to complete the agency review processes once they have resorted to them. Fundamental to the requirement of exhaustion is the belief that the administrative agencies should retain a large degree of autonomy, allowing them to exercise their informed discretion in the first instance. [13]

In *McKart v. United States*,[14] the Supreme Court demonstrated that the requirement of administrative exhaustion depends upon the applicability, in the context of a particular case, of the purposes of the doctrine. If those purposes will not be served, there is no reason to invoke the doctrine. *McKart* involved a conviction for willfully failing to report for induction into the United States armed forces. McKart's defense was that he could not be drafted because

the terms of a statute exempted from military service the sole surviving son of a family whose father had been killed in action while serving in the armed forces. Both the district court and the court of appeals had held that McKart's failure to exhaust administrative remedies precluded the raising of that substantive defense in the federal court.[15]

The Supreme Court disagreed. One reason was that the exhaustion doctrine should be used sparingly in a criminal proceeding. Of far more importance for our decision today was the second reason relied on by the Court: "The question of whether [McKart] is entitled to exemption as a sole surviving son is . . . solely one of statutory interpretation. The resolution of that issue does not require any particular expertise on the part of the [agency]; the proper interpretation is certainly not a matter of discretion. . . . Since judicial review would not be significantly aided by an additional administrative decision of this sort, we cannot see any compelling reason why [McKart's] failure to appeal should bar his only defense to a criminal prosecution." [16]

The functional approach of *McKart* was again employed in *McGee v. United States*,[17] a case resembling *McKart* in some ways but different in others. McGee had been convicted of failing to submit to induction into the armed forces. His defense was that he had been improperly classified by his draft board. As in *McKart*, the court of appeals did not reach the merits of the defense, since in its view McGee had failed

L.Ed.2d 706, 713 (1968) (dictum); *United States ex rel. Marrero v. Warden*, 483 F.2d 656, 659 (3d Cir.1973), *rev'd on other grounds*, 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974).

**12.** *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194, 202 (1969) (footnote omitted).

**13.** *See Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522, 538 (1975); *McKart v. United States*, 395 U.S. 185, 193–95, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194, 202–204 (1969); *United States ex rel. Marrero v. Warden*, 483 F.2d 656, 659 (3d Cir.1973), *rev'd*

*on other grounds*, 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974).

**14.** 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969).

**15.** *Id.* at 186–87, 89 S.Ct. at 1659, 23 L.Ed.2d at 199.

**16.** *Id.* 395 U.S. at 198–99, 89 S.Ct. at 1665, 23 L.Ed.2d at 205 (footnotes omitted).

**17.** 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971).

to exhaust his administrative remedies. This time, the Supreme Court affirmed.[18] Unlike *McKart, McGee* did not turn on construction of a statute; it required several findings of fact; and it involved an issue— McGee's entitlement to a particular draft classification—to which application of the agency's special expertise would have been most helpful.[19] The purposes of the exhaustion doctrine were thus furthered by requiring resort to the agency in *McGee,* in contrast to the situation in *McKart.*

Not surprisingly, this Court has followed the functional analysis that is mandated by *McKart* and *McGee.* Thus, in *United States ex rel. v. Marrero v. Warden,*[20] we held that exhaustion of administrative remedies was not required, since "none of the basic goals of the administrative exhaustion doctrine would be served" by requiring Marrero to seek relief from the agency. In particular, the substantive issue in the case "involve[d] only statutory construction. No administrative record or expertise [was] therefore required."[21] Significantly, Marrero, like Sanders here, was a prisoner who had sought habeas corpus relief before going to the Board of Parole.

The Supreme Court granted certiorari in *Marrero* in order "to resolve a conflict among the Courts of Appeals" on the substantive question raised in Marrero's habeas petition, and reversed the judgment of this Court.[22] But the reversal was based solely upon the substantive issue; no mention of the exhaustion problem was made in the Supreme Court's opinion. Since Marrero had made *no* effort to exhaust administrative remedies,[23] and since the merits could not have been reached unless exhaustion was deemed unnecessary under the circum-stances, it can only be concluded that the Supreme Court agreed, *sub silentio,* with the result reached on the exhaustion issue.

The cases cited today by the majority for the proposition that exhaustion is a prerequisite to the court's entertaining of a habeas petition all seem to be factually similar to *McGee* rather than to *McKart* or *Marrero.* In all but one of the cases,[24] application of the expertise of the agency was helpful to the reviewing court; only two[25] appear to have involved legal questions outside the purview of the agency's expertise, and one of those predated *McKart* by twenty-five years.

In my view, the case now before the Court is within the ambit of *McKart* and *Marrero,* not within the *McGee* line of cases. In the district court, Sanders successfully challenged the revocation of his parole on two grounds: (1) that the sentencing judge had the power to require that Sanders' term of imprisonment run concurrently with any subsequently imposed parole revocation term, and (2) that his right to due process was abridged when the Board of Parole revoked his parole on the first crime, some five weeks after it had granted him parole on the second crime on the ground that his release was not incompatible with the welfare of society, without the intervention of any new information sufficient to merit a shift in the Board's view of Sanders' qualifications for parole.

These contentions present very knotty legal questions. But, as shown by both *McKart* and *Marrero,* there is no reason to leave purely legal questions to the agency in the first instance, for the reach of its expertise does not extend that far. That is

---

**18.** Justice Marshall delivered the opinion of the Court in both *McKart* and *McGee.*

**19.** 402 U.S. at 486, 91 S.Ct. at 1569, 29 L.Ed.2d at 54.

**20.** 483 F.2d 656 (3d Cir.1973), *rev'd on other grounds,* 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974).

**21.** *Id.* at 659.

**22.** 417 U.S. 653, 656 and n.7, 94 S.Ct. 2532, 2534, 41 L.Ed.2d 383, 388 (1974).

**23.** 483 F.2d at 658.

**24.** *Smoake v. Willingham,* 359 F.2d 386 (10th Cir.1966).

**25.** *Burnett v. United States Bd. of Parole,* 491 F.2d 966 (5th Cir.1974); *United States ex rel. Jacobs v. Barc,* 141 F.2d 480 (6th Cir.1944).

particularly so where, as here, one of the two legal questions rises to the constitutional level. The agency certainly has no expertise in that realm. Nor does this case implicate the fact-finding function of the agency; the facts are straightforward and undisputed. Performance of our judicial review function would thus not be hindered by the absence of an administrative record. Furthermore, the efficiency that can often be gained from the exhaustion requirement will not be found here. The majority is in essence sending the case back to the agency for a decision on a matter about which the agency has no expertise, when we could decide the matter ourselves without the remand. This would appear to be a clear case for not requiring exhaustion.

A final factor that makes application of the exhaustion doctrine most troubling is that, unlike the petitioners in all the cases cited by the majority, Sanders is not currently incarcerated.[26] It strikes me as unduly harsh to return Sanders to prison, after he has been out in the community since December 1974, simply so that he may begin the long route through agency processes.[27] That is particularly so because the government did not raise the exhaustion issue at any time before either the district court or this Court.[28]

Accordingly, I would not dispose of the case by invoking the doctrine of exhaustion of administrative remedies, but would have the Court address the very difficult legal questions regarding the propriety of the actions of the Board of Parole.[29]

---

**26.** After the district court ordered that Sanders be released, the government petitioned that court for a stay of its judgment. The stay was granted, pending disposition of the Board of Parole's appeal to this Court.

Sanders subsequently petitioned the district court to vacate the stay of its judgment. Following briefing by both parties, the district court vacated its stay on December 27, 1974. Sanders has been at liberty since that date.

**27.** Cf. *Morrissey v. Brewer*, 408 U.S. 471, 482, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972). Indeed, the government observed in its petition for a stay of the judgment of the district court, *see* note 26 *supra*, that "[t]o release [Sanders] . . . and then cause him to be reincarcerated should the Court of Appeals reverse or modify [the district court's] order would cause hardship to [Sanders] by causing him to break any contacts he may have made during his release. . . ."

**28.** Nor can it be said that Sanders intentionally bypassed administrative remedies. At the time he filed his habeas petition in the district court, he was not represented by counsel, and there has been no suggestion that he intentionally bypassed.

**29.** In light of the majority's disposition of the case, I do not deal with the merits of Sanders' two arguments, even though I would not require exhaustion of administrative remedies. *See DeFunis v. Odegaard,* 416 U.S. 312, 350, 94 S.Ct. 1704, 1772, 40 L.Ed.2d 164, 188 (1974) (Brennan, J., dissenting) (mootness); *Sierra Club v. Morton,* 405 U.S. 727, 755, 92 S.Ct. 1361, 1376, 31 L.Ed.2d 636, 654 (1972) (Brennan, J., dissenting) (lack of standing); *Swift & Co. v. Wickham,* 382 U.S. 111, 135, 86 S.Ct. 258, 271, 15 L.Ed.2d 194, 209 (1965) (Douglas, J., dissenting) (lack of jurisdiction to take an appeal from three-judge district court); *Henry v. Mississippi,* 379 U.S. 443, 453–54, 85 S.Ct. 564, 570–571, 13 L.Ed.2d 408, 416 (1965) (Black, J., dissenting) (adequate and independent state-law ground for decision of state supreme court, precluding review by United States Supreme Court); *Harris County Commissioners Court v. Moore,* 420 U.S. 77, 89–91, 95 S.Ct. 870, 878–79, 43 L.Ed.2d 32, 42–43 (1975) (Douglas, J., dissenting) (abstention); *Harrison v. NAACP,* 360 U.S. 167, 179–84, 79 S.Ct. 1025, 1031–1034, 3 L.Ed.2d 1152, 1159–1162 (1959) (Douglas, J., dissenting) (abstention); *Burford v. Sun Oil Co.,* 319 U.S. 315, 336–48, 63 S.Ct. 1098, 1108–1114, 87 L.Ed. 1424, 1436–1442 (1943) (Frankfurter, J., dissenting) (abstention).