682 F.2d 1050
 BRADSHAW, Henry C., Appellant,
v.
CARLSON, Norman B., Director U.S. Parole Commission; Fenton,
Charles E., Warden, U.S. Penitentiary, Lewisburg; Simms,
Rudolph, Director Bureau of Corrections, P.O. Box 5107 St.
Thomas, V.I. 00801, Appellees.
 No. 79-2275.
 United States Court of Appeals,
Third Circuit.
 Submitted under Third Circuit Rule 12(6) March 27, 1981.
Decided June 25, 1981.
 
 Henry C. Bradshaw, pro se.
 Carlon M. O'Malley, Jr., U. S. Atty., Joseph F. Cimini, Asst. U. S. Atty., Scranton, Pa., for appellees.
 Before HUNTER, SLOVITER and WISDOM,* Circuit Judges.
 OPINION OF THE COURT
 PER CURIAM:
 
 
 1
 This is an appeal from an order of the United States District Court for the Middle District of Pennsylvania dismissing without prejudice appellant's petition for a writ of habeas corpus because of his failure to exhaust available administrative remedies.
 
 
 2
 Appellant, Henry C. Bradshaw, was convicted of first degree murder and sentenced to life imprisonment by the District Court of the Virgin Islands. Bradshaw was confined initially to the Adult Correctional Facility at Golden Grove, Virgin Islands, but pursuant to a request from the Director of the Bureau of Corrections of the Virgin Islands ("Director"), he was transferred to the custody of the United States Bureau of Prisons. Appellant was then committed to the United States Penitentiary in Atlanta, Georgia; subsequently he was transferred to the federal facility in Leavenworth, Kansas, and later to Lewisburg, Pennsylvania where he is currently confined.
 
 
 3
 Proceeding pro se in the district court, Bradshaw argued that: (1) the transfers violated due process because he was not afforded notice, or a hearing, or a statement of reasons for the transfers; (2) his life was in constant danger in the federal facilities; (3) the transfer to the mainland prevented his family from visiting him; (4) he should not have been transferred in the absence of a showing that he posed a security risk in the Virgin Islands prisons, and (5) there was no statutory basis for the transfers.
 
 
 4
 The district court referred appellant's petition to a magistrate, who, in a report of June 20, 1979, refused appellees' request to dismiss for failure to exhaust administrative remedies, because it would be futile to require exhaustion when the substantive claims clearly lacked merit. Relying on the Supreme Court's decision in Montanye v. Haymes, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), the magistrate concluded that there could be no due process bar to transferring an inmate from the Virgin Islands to the federal prison system in the absence of "some right or justifiable expectation" grounded in the local law making transfer dependent upon a showing of special need. Montanye, 427 U.S. at 242, 96 S.Ct. at 2547.[1] The magistrate held that 1A V.I.Code tit. 5, § 4501 (Supp.1976) granted broad discretion to the Director of the Bureau of Corrections to transfer inmates to federal prison facilities.[2] He also found that 18 U.S.C. § 5003 (1976) empowered the federal officials to assume custody of territorial prisoners.[3] Accordingly, he recommended that appellant's petition be denied.
 
 
 5
 Bradshaw filed exceptions to the magistrate's report on July 6, 1979. While continuing to press his claims concerning personal safety and hardship to his family, appellant elaborated upon his statutory claim. He argued that 18 U.S.C. § 5003 (1976) authorized the transfer of only those state and territorial prisoners requiring special treatment not available in local facilities. He also argued that 1A V.I.Code Ann. tit. 5, § 4501 did not authorize the Director to transfer inmates to the federal prison system without a hearing.
 
 
 6
 The district court dismissed appellant's petition without prejudice for failure to exhaust available administrative remedies. It held that "Bradshaw's claims relating to his personal safety, hardship on himself, and his family, and his late claim based on the general condition of his health must be dismissed for failure to exhaust administrative remedies." Bradshaw v. Carlson, No. 79-545, order at 2 (M.D.Pa. August 2, 1979). Appellant's section 5003 claim was also dismissed on exhaustion grounds. In reaching this result, the district court observed that if it were to rely on this court's decision in United States ex rel. Marrero v. Warden, Lewisburg Penitentiary, 483 F.2d 656, 659 (3d Cir. 1973), rev'd on other grounds, 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974), then "there would be no need for Bradshaw to exhaust administrative remedies because the only issue involved is the proper construction of § 5003." Bradshaw, No. 79-545, order at 3. The court refused to follow Marrero, reasoning that the Bureau of Prisons should be given an opportunity to construe the statute in administrative proceedings prior to any judicial action. This appeal followed.[4]
 
 
 7
 A federal prisoner ordinarily may not seek habeas corpus relief until he has exhausted all available administrative remedies. Arias v. United States Parole Commission, 648 F.2d 196 (3d Cir. 1981); United States ex rel. Sanders v. Arnold, 535 F.2d 848, 850 (3d Cir. 1976); Soyka v. Alldredge, 481 F.2d 303 (3d Cir. 1973). We have adhered to the exhaustion doctrine for several reasons:
 
 
 8
 (1) judicial review may be facilitated by allowing the appropriate agency to develop a factual record and apply its expertise, (2) judicial time may be conserved because the agency might grant the relief sought, and (3) administrative autonomy requires that an agency be given an opportunity to correct its own errors.
 
 
 9
 Marrero, 483 F.2d at 659. See also Sanders, 535 F.2d at 853 (Adams, J., dissenting). Bradshaw admits that he has not attempted to exhaust administrative remedies. Accordingly, the district court correctly dismissed appellant's claims with respect to his personal safety, hardship on himself and his family, and his health. These claims are particularly ill-suited for judicial review without the prior development of a factual record by administrative authorities.
 
 
 10
 The exhaustion doctrine will not be applied, however, when "none of the basic goals (of the doctrine) would be served." Marrero, 483 F.2d at 659. See also Sanders, 535 F.2d at 851-55 (Adams, J., dissenting). Thus, we held in Marrero that exhaustion of administrative remedies is not required when the issue "involves only statutory construction," because there is no need for the administrative agency to develop a factual record or apply its expertise. Marrero, 483 F.2d at 659. Such a situation involving only statutory construction is presented in the instant case. In addition, the second and third premises of the exhaustion doctrine set forth in Marrero are inapplicable because of the appellees' consistent opposition to Bradshaw's contention that section 5003 prevented his transfer in the absence of a showing of need for special treatment. It is unlikely that appellees will change their position and afford Bradshaw the relief he seeks. See Answer or Response to Rule to Show Cause, Bradshaw v. Carlson, No. 79-545 (M.D.Pa. May 29, 1979).
 
 
 11
 In holding appellant's section 5003 claim to be barred by the exhaustion doctrine, the district court concluded that the statutory construction exception created by Marrero had been implicitly overruled by this court's more recent decision in Sanders. We disagree; Sanders merely restated the general principle that a federal prisoner ordinarily may not seek habeas corpus relief until he has exhausted administrative remedies. That case did not purport to hold that exhaustion is required when the issue "involves only statutory construction."[5] Marrero, 483 F.2d at 659. Thus, Marrero continues to be the law of this circuit and the district court should not have dismissed appellant's section 5003 claim for failure to exhaust.[6]
 
 
 12
 Although disposing of appellant's petition on exhaustion grounds, the district court nonetheless addressed the merits of his section 5003 claim. The court concluded that the statute does not require a showing of a need for specialized treatment or the availability of specialized treatment facilities before a state or territorial prisoner may be transferred to the federal prison system. This is consistent with the construction given to section 5003 by Judge Adams' recent decision in Beshaw v. Fenton, 635 F.2d 239, 242-45 (3d Cir. 1980). See also Howe v. Smith, 452 U.S. 473, 101 S.Ct. 2468, 69 L.Ed.2d 171 (1981) (affirming Second Circuit's holding that transfer under section 5003 does not require a showing of a need for treatment).
 
 
 13
 Finally, the district court observed that even if section 5003 did not provide Bradshaw with a right or justifiable expectation that he would not be transferred from the Virgin Islands absent a showing of a need for special treatment, local law may provide such a right. Montanye, 427 U.S. at 242, 96 S.Ct. at 2547. The court concluded, however, that 1A V.I.Code tit. 5, § 4501 (Supp.1976) did not provide such a right, and that the statute in no way limited the discretion of the Director to transfer prisoners to federal facilities.[7]
 
 
 14
 Although the district court concluded correctly that section 4501 did not prevent the transfer of a Virgin Islands prisoner to the federal prison system, see Ali v. Gibson, 631 F.2d 1126, 1132-34 (3d Cir. 1980), that statute was no longer in force at the time of Bradshaw's transfer. Section 4501 had been repealed effective January 1, 1978; the Director had requested appellant's transfer on February 14, 1978, and he had been accepted for custody by federal authorities on April 20, 1978.[8]
 
 
 15
 In October, 1977, the Legislature of the Virgin Islands established a Bureau of Corrections, and transferred the penal authority from the Department of Public Safety to the newly established Bureau. See 1A V.I.Code tit. 5, §§ 4501-09 (Supp.1979). Under the new legislation, effective January 1, 1978, the Director of the Bureau of Corrections was
 
 
 16
 authorized to use the facilities of the United States Bureau of Prisons in accordance with agreement between the Virgin Islands and the United States Department of Justice when the Commissioner determines that detention and/or correctional facilities within the Virgin Islands are inadequate to serve the best interests of the inmate or the general welfare of the Territory.
 
 
 17
 1A V.I.Code tit. 5, § 4503(g) (repealed 1978). Section 4503(g) was amended on January 26, 1978 by substitution of the words "sentencing authority" for "Commissioner." Act No. 4087, 1978 V.I. Laws 10. Thus, section 4503(g), as it read at the time of Bradshaw's transfer, provided:
 
 
 18
 The Director is authorized to use the facilities of the United States Bureau of Prisons in accordance with agreement between the Virgin Islands and the United States Department of Justice when the sentencing authority determines that detention and/or correctional facilities within the Virgin Islands are inadequate to serve the best interests of the inmate or the general welfare of the Territory.
 
 
 19
 1A V.I.Code tit. 5, § 4503(g) (Supp.1979) (emphasis added).
 
 
 20
 The potential significance of the January 26, 1978 amendment to section 4503(g) is provided by Chief Judge Christian's opinion in Ali v. Gibson, 483 F.Supp. 1102 (D.V.I.1979), rev'd on other grounds, 631 F.2d 1126 (3d Cir. 1980). Commenting on the amendment, he observed:
 
 
 21
 Thus as matters now stand and as they have stood since January 26, 1978, the Director of the Bureau of Corrections has lost the power to transfer a prisoner from a Virgin Islands institution to a federal facility. He may do so only when the sentencing judge makes the determination of what will best serve the interests of the inmate or the general welfare of the territory. Consequently, any person transferred to the Federal Bureau of Prisons since January of 1978 solely on the Order of the Director of the Bureau of Corrections, has been unlawfully transferred.
 
 
 22
 483 F.Supp. at 1113 (emphasis added).
 
 
 23
 Although this court reversed Judge Christian, we did not then reach the question of transfers under amended section 4503(g). See Ali, 631 F.2d at 1131-32 n.9.
 
 
 24
 After examining the relevant statutory language, our reading of amended section 4503(g) corresponds with that of Judge Christian in Ali : at the time of Bradshaw's transfer, the sentencing judge, not the Director, possessed the authority to transfer prisoners from the Virgin Islands to federal facilities. On January 16, 1980, however, the statute was amended once again, substituting the word "Director" for "sentencing authority."[9] Thus, as a result of somewhat circuitous and convoluted legislative action, the power to transfer prisoners has been restored to the Director. In light of this latest amendment of section 4503(g), it would be purposeless to grant appellant's petition because, notwithstanding any order of this court, the Director now has the power to order Bradshaw's immediate transfer back to the federal prison system. Of course, it is also within the Director's power to transfer Bradshaw back to the Virgin Islands if he determines that Bradshaw's continued confinement in the federal system is not in "the best interests of the inmate or the general welfare of the territory." 1A V.I.Code tit. 5, § 4503(g) (amended January 16, 1980). There is no meaningful relief that this court can grant to appellant; any recourse that he might have lies in the administrative process.
 
 
 25
 For the foregoing reasons, the judgment of the district court, dismissing appellant's petition without prejudice, will be affirmed.
 
 
 
 *
 Honorable John M. Wisdom, United States Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 In Montanye the Court held:
 that no Due Process Clause liberty interest of a duly convicted prison inmate is infringed when he is transferred from one prison to another within the State, whether with or without a hearing, absent some right or justifiable expectation rooted in state law that he will not be transferred except for misbehavior or upon the occurrence of other specified events.
 427 U.S. at 242, 96 S.Ct. at 2547. See also Meachum v. Fano, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976).
 
 
 [2]
 Although Montanye addressed the due process question in the context of intrastate transfers, the magistrate concluded that the holding of the case could be applied with equal force to transfers from territorial to federal prisons. See Sisbarro v. Warden, Mass. State Penitentiary, 592 F.2d 1, 3 (1st Cir.), cert. denied, 444 U.S. 849, 100 S.Ct. 99, 62 L.Ed.2d 64 (1979)
 
 
 [3]
 18 U.S.C. § 5003 (1976) provides in pertinent part:
 (a) The Attorney General, when the Director shall certify that proper and adequate treatment facilities and personnel are available, is hereby authorized to contract with the proper officials of a State or Territory for the custody, care, subsistence, education, treatment, and training of persons convicted of criminal offenses in the courts of such State or Territory: Provided, That any such contract shall provide for reimbursing the United States in full for all costs or other expenses involved.
 
 
 [4]
 Bradshaw moved for, and was granted, leave to proceed on appeal in forma pauperis pursuant to Fed.R.App.P. 24(c)
 
 
 [5]
 Sanders presented two difficult legal questions: (1) whether a sentencing judge has the power to require the Parole Board to run a subsequently imposed parole violator's term concurrently with the sentence imposed by the judge, and (2) whether the Parole Board's revocation of parole on a prior crime after paroling a prisoner from an intervening sentence amounts to arbitrary and capricious conduct violative of due process. Sanders, 535 F.2d at 850. This was not a case involving only a simple question of statutory construction
 Even if Sanders is indistinguishable from Marrero-which we believe it is not-the Sanders panel lacked the power to overrule a prior panel decision. This court's Internal Operating Procedures clearly state: "It is the tradition of this court that reported panel opinions are binding on subsequent panels. Thus no subsequent panel overrules a published opinion of a previous panel. Court in banc consideration is required to overrule a published opinion of this court." United States Court of Appeals for the Third Circuit Internal Operating Procedure VIII(C). See Hamilton v. Roth, 624 F.2d 1204, 1209 (3d Cir. 1980); Sikora v. American Can Co., 622 F.2d 1116, 1124 (3d Cir. 1980).
 
 
 [6]
 Cf. McKart v. United States, 395 U.S. 185, 197-99, 89 S.Ct. 1657, 1664-65, 23 L.Ed.2d 194 (1969):
 The question ... is ... solely one of statutory interpretation. The resolution of that issue does not require any particular expertise on the part of the (agency); the proper interpretation is certainly not a matter of discretion ... Since judicial review would not be significantly aided by an additional administrative decision of this sort, we cannot see any compelling reason why (McKart's) failure to appeal should bar his only defense to a criminal prosecution.
 See also Frontier Airlines v. Civil Aeronautics Board, 621 F.2d 369, 371 (10th Cir. 1980) ("The general rule requiring exhaustion of remedies before an administrative agency is subject to an exception where the question is solely one of statutory interpretation.").
 
 
 [7]
 Section 4501 provided:
 Persons convicted of offenses against the government of the Virgin Islands shall be committed, for such terms of imprisonment as the court may direct, to the custody of the Commissioner of Public Safety or his authorized representative, who shall designate the places of confinement where the sentences shall be served.
 The Commissioner of Public Safety may designate any available, suitable, and appropriate institutions. He may order any inmate transferred from one institution to another.
 The Commissioner is also authorized to use the facilities of the United States Bureau of Prisons in accordance with agreement between the Virgin Islands and the United States Department of Justice when the Commissioner determines that detention and/or correctional facilities within the Virgin Islands are inadequate to serve the best interests of the inmate or the general welfare of the Territory.
 
 
 [8]
 The district court's opinion states that the Director had requested Bradshaw's transfer on March 14, 1978. Our review of the record indicates that the court may have made an inadvertent error-the correct date appears to be February 14, 1978. In any case, either date is subsequent to the repeal of section 4501
 
 
 [9]
 Act No. 4399, enacted on January 16, 1980 provides:
 BE IT ENACTED by the Legislature of the Virgin Islands:
 SECTION 1. Title 5, Section 4503, subsection (g), Virgin Islands Code, is hereby amended to read as follows:
 (g) The Director is authorized to use the facilities of the United States Bureau of Prisons in accordance with agreement between the Virgin Islands and the United States Department of Justice when the Director determines that detention and/or correctional facilities within the Virgin Islands are inadequate to serve the best interests of the inmate or the general welfare of the Territory.
 SECTION 2. Not later than 20 days after the date of enactment of this Act, the Director of the Bureau of Corrections shall promulgate rules and regulations establishing the procedure by which he will make determinations pursuant to the authority given the Director under Section 1 of this Act.
 The regulations required by Section 2 became effective on May 5, 1980, and can be found at 18 V.I. Reg. 138.1-138.4 (Jan.1981).