**Felipe Manuel Torres GARCIA**

v.

**Michael V. PUGH.**

**Civil Action No. 96–4782.**

United States District Court,
E.D. Pennsylvania.

Nov. 13, 1996.

Felipe Manuel Torres Garcia, pro se.

## MEMORANDUM OPINION

LOUIS H. POLLAK, District Judge.

In June 1996, Felipe Manuel Torres Garcia filed a habeas corpus petition pursuant to 28 U.S.C. § 2241. Because an error by the Clerk's Office of this court had delayed Mr. Torres Garcia's filing,[1] I requested that the government respond to Mr. Torres Garcia's petition in twenty days rather than the customary sixty. The government has complied

---

1. This court had considered Mr. Torres Garcia's original petition in October 1995. By order of October 31, 1995, I had directed that Mr. Torres Garcia make certain changes in his petition to conform with procedural requirements. Apparently, the Office of the Clerk, instead of returning Mr. Torres Garcia's petition to him with a copy of the order, mailed the materials to the attorney who had represented Mr. Torres Garcia in his criminal case, and who no longer represented him.

with that request by filing a "preliminary response" to Mr. Torres Garcia's petition.

In its response, the government argues that this court should dispose of Mr. Torres Garcia's petition without reaching the merits thereof. The government offers two bases for its argument. First, it maintains that a federal prisoner's habeas corpus petition under 28 U.S.C. § 2241 must be decided by a court in the district where the prisoner is incarcerated. Second, the government claims that Mr. Torres Garcia has not exhausted his administrative remedies, and therefore may not yet petition for habeas corpus relief. I will address each of these claims in turn.

*Personal Jurisdiction Over Petitioner's § 2241 Claim*

■ I cannot agree with the government's first claim. While it is true that a prisoner who petitions for relief under 28 U.S.C. § 2241 may file that petition in the district where he is incarcerated, *see United States v. Jack,* 774 F.2d 605, 607 n. 1 (3rd Cir.1985), it is equally true that a § 2241 petition may properly be heard by any court with jurisdiction over the custodian of the prisoner. *See Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 495, 93 S.Ct. 1123, 1129–30, 35 L.Ed.2d 443 (1973); *United States v. Grimes,* 641 F.2d 96, 99 n. 7 (3d Cir.1981). As the Supreme Court noted in *Braden:*

> Read literally, the language of § 2241(a) requires nothing more than that the court issuing the writ have jurisdiction over the custodian. So long as the custodian can be reached by service of process, the court can issue a writ "within its jurisdiction" requiring that the prisoner be brought before the court for a hearing on his claim, or requiring that he be released outright from custody, even if the prisoner himself is confined outside the court's territorial jurisdiction.

410 U.S. at 495, 93 S.Ct. at 1130.

■ In this case, the custodian/defendant, Warden Michael V. Pugh, may be found at LSCI Allenwood. Although Allenwood lies in the Middle District rather than the Eastern District of Pennsylvania, "the custodian can be reached by service of process" from a court in the Eastern District. Rule 4(k) of the Federal Rules of Civil Procedure[2] establishes that "[s]ervice of a summons ... is effective to establish jurisdiction over the person of a defendant (A) who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located, or ... (D) when authorized by a statute of the United States." *See also* 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1124 at 311 ("service of the summons and complaint may be made anywhere within the state in which the district court is sitting").[3]

Therefore, this court does indeed "have jurisdiction" over Warden Pugh. The government's claim that "there is no *in personam* jurisdiction over the custodian" in this district cannot be sustained.

The cases cited by the government in support of its jurisdictional claim do contain some ambiguous language. *See, e.g., United States v. Kennedy,* 851 F.2d 689, 690 (3rd Cir.1988) ("Such a petition is brought in the district where the prisoner is confined"). However, it is important to note that of these cases, all but one[4] involved a prisoner's filing

2. The Federal Rules of Civil Procedure generally apply to actions, such as this one, that seek a writ of habeas corpus. Rule 81(a)(2) makes the other provisions of the Federal Rules of Civil Procedure applicable to habeas corpus proceedings "to the extent that the practice in such proceedings is not set forth in statutes of the United States and has heretofore conformed to the practice in civil actions."

3. Under the Conformity Acts, the first of which was enacted by Congress in 1789, a federal court could issue process only within the district in which it sat, absent a federal statute to the contrary. *See* 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1067.1 (1986); *see also Robertson v. Railroad Labor Bd.,* 268 U.S. 619, 622, 45 S.Ct. 621, 622–23, 69 L.Ed. 1119 (1925). With the adoption of the Federal Rules of Civil Procedure in 1938, however, federal courts' territorial reach was expanded to the borders of the states in which they were located. *See 1937 Advisory Committee Note to Rule 4(f)* in 12 Wright & Miller, *supra,* App.C.

4. The government does cite one case in which a district court refused to hear a habeas corpus petition filed in another district within the *same* state, *Peon v. Thornburgh,* 765 F.Supp. 155 (S.D.N.Y.1991). But the result in *Peon* is puz-

a habeas petition *in a different state* from that in which he was confined. *See id.;* *Dunne v. Henman,* 875 F.2d 244 (9th Cir. 1989); *Chatman–Bey v. Thornburgh,* 864 F.2d 804 (D.C.Cir.1988). In such cases, a court is indeed unlikely to have *in personam* jurisdiction over the prisoner's custodian. That situation differs markedly from one in which the court is located in the same state as the custodian.

In sum, this court is not bound to dismiss or to transfer Mr. Torres Garcia's case on personal jurisdictional grounds.

*Considerations of Venue Under 28 U.S.C. § 1404*

■ That personal jurisdiction over the parties may be established does not of course mean that this court must entertain Mr. Torres Garcia's petition. "Traditional venue considerations" should also be weighed.[5] *Braden,* 410 U.S. at 493, 93 S.Ct. at 1128–29. The "convenience of parties and witnesses" and the "interest of justice" must therefore be brought to bear in determining the proper forum for Mr. Torres Garcia's petition. 28 U.S.C. § 1404(a).

■ Considerations of "convenience" might well suggest that the case be transferred. Presumably records of the Bureau of Prisons, as well as the prisoner himself, are more readily available in the Middle District of Pennsylvania, where LSCI Allenwood is located, than they are in the Eastern District. However, in the special circumstances of Mr. Torres Garcia's case, the "interest of justice" outweighs issues of convenience. The error by the Clerk's Office has already caused substantial delay. Transferring the case to the Middle District, or indeed dismissing it, would further postpone consideration of the merits of petitioner's claim. In

weighing the relative burdens caused by retaining or disposing of this case, I find that the interests of justice require that it remain—at least for now—in this court.

*Exhaustion of Administrative Remedies*

■ The government stands on firmer ground when it argues that Mr. Torres Garcia must exhaust his administrative remedies within the Bureau of Prisons before bringing a habeas corpus action in this or any other federal court.

"A federal prisoner ordinarily may not seek habeas corpus relief until he has exhausted all administrative remedies." *Bradshaw v. Carlson,* 682 F.2d 1050, 1052 (3d Cir.1981); *see also Arias v. United States Parole Commission,* 648 F.2d 196 (3d Cir. 1981). Exceptions to the exhaustion doctrine may be made only when requiring exhaustion would not serve any of the doctrine's basic goals. Those goals, as stated by the Third Circuit, are that (1) judicial review may be facilitated by allowing the appropriate agency to develop a factual record and apply its expertise; (2) judicial time may be conserved because the agency might grant the relief sought; and (3) administrative autonomy requires that an agency be given an opportunity to correct its own errors. *See Bradshaw,* 682 F.2d at 1052; *Arias,* 648 F.2d at 199; *United States ex rel. Marrero v. Warden, Lewisburg Penitentiary,* 483 F.2d 656, 659 (3d Cir.1973), *rev'd on other grounds,* 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974). In Mr. Torres Garcia's case, a district court would benefit markedly from the development of a factual record regarding the circumstances and justification for the Bureau of Prisons' recomputation of Mr. Torres Garcia's sentence; furthermore, if the

---

zling; the Federal Rules of Civil Procedure make clear that the *in personam* jurisdiction of a federal district court stretches at least to the boundaries of the state in which the court is located. Indeed, I have found no case other than *Peon* that has held that interdistrict, intrastate jurisdiction is improper. This includes those cases cited by *Peon, see Billiteri v. United States Bd. of Parole,* 541 F.2d 938 (2d Cir.1976); *In re Tripati,* 836 F.2d 1406 (D.C.Cir.1988) (per curiam); *Hassain v. Johnson,* 790 F.2d 1420 (9th Cir.1986) (per curiam), and those citing *Peon, see Michael v. INS,* 870 F.Supp. 44, 46 (S.D.N.Y.1994);

*Woodard v. Mennella,* 861 F.Supp. 192, 199 (E.D.N.Y.1994); *Chukwurah v. United States,* 813 F.Supp. 161, 168 (E.D.N.Y.1993).

5. It is true that unless a claim of improper venue is timely raised by a defendant, the defense is deemed waived, and a court may proceed to decide the case. *See* 4 Charles Alan Wright & Arthur R. Miller § 1063 at 224. A court may, however, raise considerations of venue *sua sponte. Kirby v. Mercury Sav. and Loan Ass'n,* 755 F.Supp. 445, 448 (D.D.C.1990).

Bureau did in fact make an error in that computation, it should be given the chance to rectify it.

In similar but not identical circumstances, the Supreme Court has noted that to obtain sentencing credit under 18 U.S.C. § 3585(b) a federal prisoner must exhaust his administrative remedies before seeking judicial relief. *United States v. Wilson*, 503 U.S. 329, 334, 112 S.Ct. 1351, 1354, 117 L.Ed.2d 593 (1992). *See also United States v. Wilson*, 997 F.2d 208, 209 (6th Cir.1993) ("The defendant may seek judicial review of the Attorney General's computation once he has exhausted all administrative remedies."); *United States v. Checchini*, 967 F.2d 348 (9th Cir.1992) (prisoner must exhaust administrative remedies before petitioning for judicial review of Attorney General's sentence computation).

In this case, the government has offered the declaration of the supervisory attorney-advisor for the Bureau of Prisons at LSCI Allenwood that the Bureau of Prisons has no record of any "remedy data" for Mr. Torres Garcia. Mr. Torres Garcia offers a document from the LSCI Allenwood Records Department discussing his claim, but it is titled "Informal Resolution." It is the *formal* complaint process which Mr. Torres is required to follow.

This court therefore will give petitioner thirty days to show cause why his case should not be dismissed for failure to exhaust administrative remedies under 28 C.F.R. §§ 542.10–542.16. If at the end of that time petitioner has not offered evidence that he

has in fact exhausted his administrative remedies, then the case will be dismissed.[6]

---

**6.** I would note, however, that if the materials supplied by Mr. Torres Garcia represent the entirety of the information supplied to him by the Bureau of Prisons, the Bureau would seem to owe him a fuller explanation than it has thus far provided of why he must spend an additional two years in prison.

According to Mr. Torres Garcia, on March 13, 1994, the Bureau of Prisons issued him a Sentencing Monitoring Computation Data Sheet that listed his projected release date as September 4, 1995. On May 24, 1995, the Bureau apparently issued a revised Sentence Monitoring Computation Data Sheet that listed Mr. Torres Garcia's projected date of release as August 27, 1997. According to the revised Data Sheet that accompanies Mr. Torres Garcia's Petition for Habeas

Corpus, the totality of the Bureau's explanation for that change was as follows: "Re-computed at ALF to correct error in jail credit. Previous entry gave credit that went towards his old computation that was satisfied prior to the current sentence being imposed." The "Informal Resolution" to Mr. Torres Garcia's complaint stated, in full: "Title 18 3585B can't give jail time on another sentence. Although they stated the sentence was to run concurrent the 1 sentence had already expired prior to imposing the second sentence."

The above-quoted documents are written in a prose not readily intelligible to readers (including the author of this Memorandum Opinion) who have not participated in drafting them.