**Victor WOODARD, Plaintiff,**

v.

**Thomas L. MENNELLA, Chief Clerk of NYS Supreme Court, Kings County, and Paul Tima, Motion Clerk of the NYS Supreme Court, Kings County, Defendants.**

**No. CV–93–2741.**

United States District Court, E.D. New York.

Aug. 25, 1994.

█

---

Victor Woodard, pro se.

Carolyn Cairns Olson, Asst. Atty. Gen., New York City, for defendants.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Plaintiff *pro se* Victor Woodard commenced this action pursuant to 42 U.S.C. § 1983 by filing a Complaint on June 21, 1993. As the basis for his Complaint, plaintiff alleges that defendants Thomas L. Mennella, Chief Clerk of the Supreme Court, Kings County ("Mennella") and Paul Tima, Motion Clerk of the Supreme Court, Kings County ("Toma") [1] violated his rights by failing to file his *pro se* motion for a writ of habeas corpus because he was represented by counsel in a pending state court criminal action. Defendants now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, their motion is granted.

## FACTS

On October 22, 1992, Woodard was arrested and charged with attempted burglary in the second degree, possession of burglary tools and criminal mischief in the fourth degree. Woodard thereafter was ordered held "for the action of a grand jury proceeding."

Pl.'s Answer to Defs.' Interrogs. ¶ 7. On October 26, 1992, a grand jury convened in the State of New York, Kings County, returned an indictment charging Woodard with attempted burglary in the second degree and possession of burglary tools. *See People v. Woodard*, Kings Co. Indictment No. 12320/92. While defendants allege that plaintiff was represented by George Lewis, Esq. and the Legal Aid Society during the entirety of this criminal action, Defs.' 3(g) Statement ¶ 8, plaintiff alleges that he was represented by Lewis during the arraignment, and that the court assigned Spiro L. Ferris, Esq. as his "legal advisor" and granted him permission to proceed *pro se* at pretrial proceedings and at trial. Pl.'s Answer to Defs.' Interrogs. ¶ 7 nn. 1, 2.[2]

Plaintiff alleges that on November 14, 1992, he sent a *pro se* application for a writ of habeas corpus from the Brooklyn Correctional Facility to the Supreme Court of the State of New York, Kings County (the "state court").[3] Compl. p. 3. According to plaintiff, upon receiving the application, defendant Toma "without authorization from the Court and without a judge's mandatory initiative, unconstitutionally dismissed the plaintiff's pro se application for a writ of habeas corpus and forwarded it to the plaintiff's Court appointed attorney[,]" thereby "den[ying] and obstruct[ing] the plaintiff's constitutional right to petition to the Court for a writ of habeas corpus." Compl. pp. 2–3 & n. 1. Toma's action was memorialized in a letter dated November 25, 1992, in which Toma notified plaintiff that "[t]his court will not entertain pro se applications by defendants who have counsel. Your application has been forwarded to your attorney[.]" Compl. Ex. G. Lewis, the attorney—who has not been named as a party to this action—apparently never resubmitted plaintiff's *pro se* application or advised the state court that he no

1. Toma is sued incorrectly herein as "Tima."

2. Curiously, the papers do not indicate the ultimate disposition of Woodard's criminal action, or whether the action is ongoing.

3. In the petition, plaintiff claimed that his detention pursuant to a parole detainer warrant was

illegal because the arresting officer did not have probable cause to arrest him, and because the New York State Division of Parole lodged the warrant against him without reasonable cause. *See* Affidavit of Carolyn Cairns Olson in Support of Summary Judgment, Sworn to June 6, 1994 ("Olson Aff.") Ex. B.

longer was representing plaintiff.[4] Compl. p. 4; Defs.' 3(g) Statement ¶ 9.

Defendants maintain that the state court has a policy of referring to counsel *pro se* motions submitted by criminal defendants who are represented by counsel; they do not state whether this policy has been reduced to written form. Affidavit of Thomas L. Mennella, Sworn to June 6, 1994 ("Mennella Aff.") ¶ 2; Affidavit of Paul Toma, Sworn to June 6, 1994 ("Toma Aff.") ¶ 2. While defendants allege that they did not create this policy, they acknowledge that they are charged with its implementation. Mennella Aff. ¶ 2; Toma Aff. ¶ 2. Mennella alleges— and plaintiff does not dispute—that he was not personally involved in the decision to forward plaintiff's petition to Lewis, Mennella Aff. ¶ 3; however, Toma describes his involvement as follows:

> Upon review of plaintiff's *pro se* motion papers, I noted that plaintiff was challenging, *inter alia*, the constitutionality of his October 22, 1992 arrest by New York City Police Officer Robert Hardenfelder. I then looked through the state court records and noted plaintiff had been indicted as a result of that arrest and was a defendant in an action where he was represented by George Lewis, Esq. and the Legal Aid Society.
>
> Therefore, in accordance with the state court policy, on November 25, 1992 I forwarded the *pro se* motion to Mr. Lewis. I also notified plaintiff by letter, that his motion had been forwarded to his attorney....

Toma Aff. ¶¶ 3–4.

By the present action, plaintiff seeks compensatory damages in the amount of $1,000 from each defendant and punitive damages in the amount of $9,000 from each defendant, as well as a declaratory judgment that defendants' acts and policies violated his constitutional rights and violated state law. Compl. p. 5. In addition, plaintiff asks the court "to apply the applicable law to the full merits of [his] case." Compl. p. 5.

## DISCUSSION

In support of their motion for summary judgment, defendants argue that plaintiff's action for money damages is barred by the Eleventh Amendment and the doctrine of qualified immunity; that the Complaint should be dismissed on the grounds of comity and federalism; and that the Complaint fails to state a claim under § 1983. After reviewing the general standards governing summary judgment motions, the court will consider defendants' substantive arguments.

### I. *Summary Judgment Standards*

A party seeking summary judgment must show that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A "dispute about a material fact is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Thus, "if the evidence is merely colorable ... or is not significantly probative, ... summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2510–11; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986) (when moving party has carried its burden under Rule 56(c), opponent must do more than simply show that "there is some metaphysical doubt as to the material facts"). In ruling on a motion for summary judgment, the judge's function is not himself to weigh the evidence and determine the truth of an issue, but merely to determine whether there is an issue to be tried. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510. Finally—as is the case

---

4. While defendants allege and plaintiff does not dispute that his application for a writ challenging the parole warrant ultimately was heard and denied by the Supreme Court, Bronx County, *see* Olson Aff. Ex. D; Defs.' 3(g) Statement ¶ 9, the Bronx Supreme Court's decision was based on a different ground—that the Administrative Law Judge did not abuse his discretion in denying Woodard the opportunity to waive his statutory right to counsel and proceed *pro se* at his final parole revocation hearing. Because this argument clearly is different from the arguments petitioner raised in the application giving rise to the present action, *see* Olson Aff. Ex. B, it is unclear whether plaintiff's petition ever was adjudicated.

here—an action may be ripe for summary disposition where there are no material facts in dispute and the question presented is solely a matter of law. *See, e.g., Dia Navigation Co., Ltd. v. Reno,* 831 F.Supp. 360, 365 (D.N.J.1993), *aff'd in part, rev'd in part on other grounds,* 27 F.3d 918, (3d Cir.1994).

## II. *The Immunity Doctrines*

### A. *Eleventh Amendment Immunity*

 To the extent that plaintiff seeks money damages from Mennella and Toma in their official capacities, his claims can be disposed of readily. As the Second Circuit recently has reiterated, "[t]o the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Gan v. City of N.Y.,* 996 F.2d 522, 529 (2d Cir.1993) (*citing Kentucky v. Graham,* 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985); *Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991)). Here, Mennella and Toma, officers of the state court, clearly are "state officials"; accordingly, they are entitled to summary judgment on their claim that the Eleventh Amendment bars the claims that plaintiff has stated against them in their official capacities.

 In addition, under the doctrine set forth in *Pennhurst State Sch. and Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), the Eleventh Amendment bars plaintiff's action to the extent that he seeks a declaratory judgment that defendants' acts and policies violated *state* law.

### B. *Absolute and Qualified Immunity*

To the extent that plaintiff has sued Mennella and Toma in their individual capacities, while defendants are not entitled to Eleventh Amendment immunity for the individual-capacity claims, they may be entitled to absolute or qualified immunity.

A number of courts have held that the clerk of the court and deputy clerks are entitled to absolute quasi-judicial immunity when they "perform tasks that are an integral part of the judicial process." *Mullis v.*

*United States Bankr. Ct., Dist. of Nev.,* 828 F.2d 1385, 1390 (9th Cir.1987), *cert. denied,* 486 U.S. 1040, 108 S.Ct. 2031, 100 L.Ed.2d 616 (1988); *see also Scruggs v. Moellering,* 870 F.2d 376, 377 (7th Cir.) ("Auxiliary judicial personnel who perform functions at once integral to the judicial process and nonmechanical are entitled to absolute immunity from damages liability for acts performed in the discharge of those functions, just as judges are."), *cert. denied,* 493 U.S. 956, 110 S.Ct. 371, 107 L.Ed.2d 357 (1989). This grant of absolute immunity has been based on the theory that "disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts[.]" *Scruggs,* 870 F.2d at 377.

The Supreme Court recently cast doubt on the continued viability of these rulings in *Antoine v. Byers & Anderson, Inc.,* —— U.S. ——, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993), where it held that court reporters are entitled only to qualified immunity—and not absolute immunity—for their function of recording court proceedings verbatim. After noting that the proponent of an absolute immunity claim bears the burden of establishing the justification for such immunity, the Court emphasized the following factors: (1) there is no common law tradition of according court reporters absolute immunity, and court reporters, who are charged with producing verbatim transcripts, are not like common law judges, who exercised discretion and judgment in taking notes during a court proceeding, *id.,* —— U.S. at —— – ——, 113 S.Ct. at 2170–71; (2) because the duties performed by court reporters are non-discretionary, they do not implicate the concern with protecting "the independent and impartial exercise of judgment vital to the judiciary [which] might be impaired by exposure to potential damages liability[,]" and which is at the heart of the judicial immunity doctrine, *id.,* —— U.S. at —— – ——, 113 S.Ct. at 2171–72; and (3) the public interest in protecting "the entire judicial process from vexatious law suits brought by disappointed litigants" does not require conferring absolute

immunity on court reporters, *id.,* —— U.S. at ——, 113 S.Ct. at 2172.

■ In light of *Antoine,* this court declines to grant defendants here summary judgment on the ground that they are absolutely immune from suit. There is at least a question of fact regarding whether the function of referring a *pro se* motion to an applicant's attorney of record involves any exercise of discretion, and in addition, the court is not aware of any common law tradition of according absolute immunity to court clerks. It therefore is necessary to consider whether defendants are entitled to summary judgment on the ground that they are *qualifiedly* immune from plaintiff's claim for money damages. It bears noting that "[b]ecause the defense of qualified immunity is designed to relieve government officials of the burdens of litigation as well as of the threat of damages, summary judgment is encouraged as a device for disposing of claims barred by qualified immunity." *Gan,* 996 F.2d at 532.

■ Under the doctrine of qualified immunity, an official is liable for damages only where his or her conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Buckley v. Fitzsimmons,* —— U.S. ——, ——, 113 S.Ct. 2606, 2613, 125 L.Ed.2d 209 (1993). The availability of the defense depends on the " 'objective legal reasonableness' of the allegedly unlawful official action, 'assessed in light of the legal rules that were clearly established at the time it was taken.' " *Gan,* 996 F.2d at 531 (*quoting Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (internal quotations and citations omitted)). The Supreme Court has noted that "[a]s the

qualified immunity defense has evolved, it provides ample support to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

■ Here, plaintiff asserts that defendants' claim for qualified immunity should be denied because defendants "knew or reasonably should have known that the action they took within their sphere of official responsibility would violate the fundamental constitutional and statutory rights of the plaintiff." Affidavit of Victor Woodard, Sworn to July 18, 1994 ("Woodard Aff.") ¶ 5 n. 5. Based on a liberal reading of plaintiff's papers, the court construes the "rights" plaintiff claims were denied him as the right of access to the court to present a petition for a writ of habeas corpus, and the right to proceed *pro se* while being represented by counsel.

With respect to plaintiff's claim against defendants for denial of access to the court, plaintiff largely relies on § 7003(c) of the N.Y.Civ.Prac.L. & R. to allege that he is entitled to damages for defendants' "dismissal" of his *pro se* petition. That section describes generally when a writ of habeas corpus shall issue, and provides for damages of $1,000 from each judge or member of the court who violates the section in refusing to issue a writ.[5] A facial review of this section readily reveals that it does not provide a cause of action for the type of claim alleged here, and moreover, the defendants from whom plaintiff seeks damages are neither judges nor members of the court; thus, plaintiff had no clearly established right under § 7003(c) at the time his *pro se* petition was filed.

---

**5.** Section 7003 reads in relevant part as follows:
§ 7003. When the writ shall be issued
(a) Generally. The court to whom the petition is made shall issue the writ without delay on any day, or, where the petitioner does not demand production of the person detained or it is clear that there is no disputable issue of fact, order the respondent to show cause why the person detained should not be released. If it appears from the petition or the documents annexed thereto that the person is not illegally detained or that a court or judge of the United

States has exclusive jurisdiction to order him released, the petition shall be denied.
. . . .
(c) Penalty for violation. For a violation of this section in refusing to issue the writ, a judge, or, if the petition was made to a court, each member of the court who assents to the violation, forfeits to the person detained one thousand dollars, to be recovered by an action in his name or in the name of the petitioner to his use.
N.Y.Civ.Prac.L. & R. § 7003.

As to plaintiff's constitutional right of access to the court, it is well-settled that the due process clause of the Fourteenth Amendment protects an individual's right of access to the civil courts, *e.g., Chambers v. Baltimore & Ohio R.R.*, 207 U.S. 142, 28 S.Ct. 34, 52 L.Ed. 143 (1907); *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), and a deprivation of this right is actionable under § 1983. *E.g., Abdul–Akbar v. Watson*, 901 F.2d 329 (3d Cir.1990). However, even though the "contours of the plaintiff's federal rights" may have been clearly delineated at the time of the complained-of acts, summary judgment may still be appropriate if " 'it was objectively reasonable for [the official] to believe that his acts did not violate those rights.' " *Gan*, 996 F.2d at 532 (*quoting Robinon v. Via*, 821 F.2d 913, 921 (1987)). In this case, it was objectively reasonable for defendants to believe that their act of forwarding Woodard's *pro se* motion to his counsel of record did not violate Woodard's right of access to the court: in the first place, defendants did not "dismiss" his petition, as plaintiff claims; in the second place, forwarding the petition to plaintiff's attorney would seem to be an objectively reasonable means of ensuring plaintiff's access to the court; [6] and finally, in forwarding the petition, defendant Toma was acting pursuant to a state court policy which he is charged with implementing.

With respect to plaintiff's claim for violation of his right to proceed *pro se* while being represented by counsel, it is axiomatic that "[t]he right to self-representation and the assistance of counsel are separate rights depicted on the opposite side of the same Sixth Amendment coin [hence t]o choose one obviously means to forego the other." *United States v. Purnett*, 910 F.2d 51, 54 (2d Cir. 1990); *see also United States v. Mitchell*, 137 F.2d 1006, 1010 (2d Cir.1943) (rights of self-representation and representation by counsel "cannot both be exercised at the same time"); *but cf. People v. Renaud*, 145 A.D.2d 367, 368, 535 N.Y.S.2d 985, 987–88 (1st Dep't 1988) ("The court . . . may not simply disregard a motion filed directly by the defendant because there is an attorney on the scene. A motion, whether made by counsel or a *pro se* defendant, mandates a ruling or else the court must clearly state its reasons for refusing to decide the motion."). Hence plaintiff here had no clearly established right to file his petition *pro se* while the record indicated that he was represented by counsel in a related criminal proceeding. *See* Toma Aff. ¶ 3; *accord Murph v. Parisi*, No. 78 Civ. 270 (E.D.N.Y. June 6, 1978) (Nickerson, J.) (finding that clerk of court was entitled to qualified immunity for, *inter alia*, forwarding the plaintiff's *pro se* motion to counsel). Accordingly, defendants are entitled to summary judgment dismissing plaintiff's claims against them for money damages based on the doctrine of qualified immunity.

Finally, to the extent the Complaint seeks to assert individual-capacity claims against Mennella, it is deficient for the additional reason that a supervisory official cannot be held liable under § 1983 on a theory of respondeat superior. *Gan*, 996 F.2d at 536 (*citing Monell v. Department of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978)); *East Coast Novelty Co., Inc. v. City of N.Y.*, 809 F.Supp. 285, 298–99 (S.D.N.Y.1992). Because Mennella has alleged that he "was not personally involved in the decision to deliver plaintiff's *pro se* motion to George Lewis, Esq." and that he did not create the challenged policy, Mennella Aff. ¶¶ 2–3, and plaintiff has not controverted these allegations, plaintiff's damages claim against Mennella must fail.

### III. *The Remaining Claims*

The immunity doctrines do not bar this court from considering plaintiff's claim that he is entitled to a declaratory judgment that defendants' actions and policies violated his constitutional rights, *Edelman v. Jordan*, 415 U.S. 651, 664, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974); *Pulliam v. Allen*, 466 U.S. 522, 541–42, 104 S.Ct. 1970, 1980–81, 80 L.Ed.2d 565 (1984); accordingly, the court turns to

---

**6.** It warrants mention that plaintiff alleges that he spoke with Lewis about resubmitting the *pro se* application, but Lewis refused. Plaintiff alleges that he did not discuss the application with anyone else, and there is no indication that he wrote to the state court to apprise it of Lewis's refusal to represent him with respect to the petition. *See* Pl.'s Answer to Defs.' Interrogs. ¶ 6.

defendants' remaining arguments as they relate to plaintiff's request for a declaratory judgment and for application of "the applicable law to the full merits of the plaintiff's case."

■ With respect to plaintiff's claim for declaratory relief, the court finds that defendants are entitled to summary judgment on this claim under principles of comity and federalism. In *Wallace v. Kern*, 481 F.2d 621, 622 (2d Cir.1973), *cert. denied*, 414 U.S. 1135, 94 S.Ct. 879, 38 L.Ed.2d 761 (1974), the Second Circuit reviewed a district court decision which, *inter alia*, ordered the Clerk of the Criminal Term of the Supreme Court, Kings County, "to place on the court's calendar all *pro se* motions filed by inmates of the Brooklyn House of Detention." The Second Circuit reversed this order, holding that " 'under the principles known as comity a federal district court has no power to intervene in the internal procedures of the state courts.' " *Id.* (citation omitted). These same principles require this court to decline to award plaintiff the declaratory relief he seeks.

■ Plaintiff also asks the court to "apply the applicable law to the full merits" of his case, which defendants construe as a request that this court order his release. Reading the *pro se* Complaint generously, the court agrees that it can be interpreted to include such a request. As defendants concede, this court has held that the refusal to consider a petitioner's *pro se* application satisfies the exhaustion requirement of 28 U.S.C. § 2254(b). *See United States ex rel. Napoli v. State of N.Y.*, 379 F.Supp. 603, 605 (E.D.N.Y.1974). Defendants nonetheless contend that this court cannot entertain plaintiff's habeas action because it does not have jurisdiction over plaintiff's present custodian, as it must to adjudicate the petition. *See Billiteri v. United States Bd. of Parole*, 541 F.2d 938, 948 (2d Cir.1976); *see also Peon v. Thornburgh*, 765 F.Supp. 155, 156 (S.D.N.Y.1991) ("A petition for habeas corpus must be brought against the petitioner's custodian, and the court considering the petition must have jurisdiction over that custodian."). Defendants are correct that because plaintiff has not named his custodian as a defendant in this action, but rather only has named Mennella and Toma—who obviously do not have custody of him—this court lacks jurisdiction to entertain plaintiff's petition for a writ of habeas corpus. Accordingly, the court cannot afford plaintiff the relief he seeks.

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is hereby granted.

SO ORDERED.