In re Cherry Barbara CASTILLO, Debtor.

Nancy Curry, Chapter 13 Trustee, and Julie Feder, Appellants,

v.

Cherry Barbara Castillo and G. Thomas Leonard, Appellees.

BAP Nos. CC–99–1353–PCMe, CC–99–1439–PCMe.
Bankruptcy No. LA 97–45899–ES.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued Jan. 19, 2000.

Submitted Feb. 2, 2000.

Decided April 19, 2000.

David S. Hagen, Encino, CA, for Nancy Curry, Chapter 13 Trustee.

Bruce A. Lindsay, Moss, Hovden & Lindsay, Whittier, CA, for Cherry Barbara Castillo.

Before: PERRIS, CARLSON[1] and MEYERS, Bankruptcy Judges.

## OPINION

PERRIS, Bankruptcy Judge.

The chapter 13[2] trustee and a member of her staff appeal from two orders of the bankruptcy court in which the court authorized lawsuits against them to proceed in state court. The bankruptcy court concluded that the trustee and her staff, who are alleged to have been negligent and to have caused debtor damage, are not immune from liability for their actions. We conclude that the trustee and her staff enjoy quasi-judicial immunity for some but not all of their actions, and therefore REVERSE in part and AFFIRM in part.

## FACTS

Debtor filed a chapter 13 petition. Nancy Curry (Curry) was appointed as the trustee in debtor's case. Julie Feder (Feder) is employed by Curry and assisted Curry with certain matters in the case.

After debtor's petition was filed, Curry conducted a § 341(a) meeting of creditors. After the meeting, she noted on her worksheet that the § 341(a) meeting would be continued to January 20, 1998. Due to a clerical error in the trustee's office, the confirmation hearing was set for December 3, 1997. Neither debtor nor her counsel was notified of the confirmation hearing date.[3]

On December 3, the court held the confirmation hearing. Debtor did not appear, and therefore did not provide proof that she had made the plan payments required for confirmation. As a result, the court dismissed debtor's case on December 16, 1997. Debtor's counsel received notice of the dismissal sometime after it was served on December 19, but did not take any action before the mortgagee on debtor's residence foreclosed on December 26, 1997. Counsel then successfully moved to vacate the dismissal. Because debtor's residence had been sold to a third party, however, the court refused to set aside the foreclosure sale.

Debtor then sought leave from the bankruptcy court to sue Curry and Feder in state court. Curry and Feder claimed immunity for their actions. The bankruptcy court concluded that they are not entitled to immunity for the allegedly negligent acts in miscalendaring the hearing and failing to give notice of the hearing, and granted debtor's motion for leave.

Debtor's state court complaint included a claim against her attorney, G. Thomas Leonard, for failing to move to set aside the dismissal of her bankruptcy case in time to prevent the foreclosure. Leonard then also sought leave from the bankruptcy court to file a cross-complaint in state

---

1. Hon. Thomas E. Carlson, Bankruptcy Judge for the Northern District of California, sitting by designation.

2. All statutory references are to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, unless otherwise indicated.

3. The parties do not dispute that the function of setting and providing notice of confirmation hearings was delegated to the trustee. There is no local bankruptcy rule making the delegation. The Notice of Commencement of Case under Chapter 13 provides, however, that

> [a] hearing on confirmation of the debtor(s) plan will be scheduled by the chapter 13 trustee at the 341(a) meeting of creditors if the trustee objects to the plan, or a party in interest has filed and timely served an objection to the plan, or appears at the 341(a) meeting and requests a confirmation hearing. The trustee will only give written notice of a hearing on confirmation, if one is set, to all objecting and appearing parties.

court against Curry and Feder, claiming that debtor's damage resulted from their negligence rather than his. Curry and Feder again claimed immunity, and the bankruptcy court again concluded that they are not entitled to it. The court granted Leonard's motion for leave to sue in state court.

Curry and Feder appeal both orders.

## ISSUES

1. Whether we have jurisdiction to hear this matter.

2. Whether the bankruptcy court erred in granting debtor and her counsel leave to sue the trustee and her staff, based on its conclusion that Curry and Feder are not immune from liability for their actions in erroneously setting and failing to give notice of debtor's confirmation hearing.

## STANDARD OF REVIEW

A decision to grant a party leave to sue a trustee is within the discretion of the court that appointed the trustee, and is reviewed for an abuse of discretion. *In re Kashani*, 190 B.R. 875, 881 (9th Cir. BAP 1995). A bankruptcy court necessarily abuses its discretion if it bases its ruling "on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). The only substantive issue in this case is whether the trustee is immune from liability. That is a question of law that the panel reviews *de novo*. *In re Way*, 229 B.R. 11, 13 (9th Cir. BAP 1998) (panel reviews questions of law *de novo* ).

## DISCUSSION

### 1. *Jurisdiction*

Although debtor and Leonard do not challenge our jurisdiction to hear this appeal, we must consider our jurisdiction, even if the parties do not challenge it. *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1135 (9th Cir.1997). We have jurisdiction to hear appeals from final judgments, orders and decrees. 28 U.S.C. § 158(b)(1). We also have jurisdiction to hear appeals from interlocutory orders, but only if we grant leave to appeal. *Id.* To be final, an order "must end the litigation, or dispose of a complete claim for relief, and leave nothing for the court to do but execute the judgment." *Kashani*, 190 B.R. at 882. An interlocutory order, on the other hand, is one that decides an intervening matter. *Id.*

The orders in this case are not final; they do not dispose of the litigation or dispose of a complete claim for relief. They merely allow debtor and her former counsel to sue Curry and Feder. Therefore they are interlocutory orders.

It is appropriate to grant leave to allow the appeal of an interlocutory order "if the order involves a controlling question of law where there is substantial ground for difference of opinion and when the appeal is in the interest of judicial economy because an immediate appeal may materially advance the ultimate termination of the litigation." *Kashani*, 190 B.R. at 882.

In this case, the issue of a trustee's immunity from suit is a controlling question of law about which there is substantial ground for a difference of opinion. In addition, deciding the appeal would further judicial economy, because if the trustee is immune from liability, the litigation will be terminated. Therefore we grant leave to appeal.

### 2. *Immunity*

At the bankruptcy court, the trustee asserted immunity under two distinct theories. First, she argued that she and her staff are absolutely immune from liability because, in setting and providing notice of the confirmation hearing, they were performing judicial functions. In the alternative, she argued that she and Feder enjoy qualified immunity for those actions, which

she asserts were undertaken in administration of the bankruptcy estate.

The bankruptcy court rejected the claim of absolute immunity, concluding that setting and giving notice of confirmation hearings are not judicial functions. The court also rejected the trustee's qualified immunity argument, concluding that, in administering the bankruptcy estate, the trustee can be held liable for the types of negligent acts alleged here.

## A. Absolute quasi-judicial immunity

■■■ Judges generally enjoy absolute judicial immunity from civil liability for acts performed in their judicial capacity. *Mireles v. Waco*, 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *Stump v. Sparkman*, 435 U.S. 349, 357, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Absolute judicial immunity also extends to nonjudicial officers who perform official duties that are functionally comparable to those of judges. *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993). The courts use a functional approach to determine whether a nonjudicial officer is entitled to absolute quasi-judicial immunity, looking to the nature of the function performed and not the identity of the actor performing it. *Stump*, 435 U.S. at 362, 98 S.Ct. 1099; *Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir.1999). Under this approach, the fact that the actor is the trustee rather than a judicial employee is irrelevant.

Before the Supreme Court decided *Antoine*, the Ninth Circuit had extended absolute immunity to nonjudicial officers who performed tasks that are "an integral part of the judicial process." *Mullis v. United States Bankruptcy Court*, 828 F.2d 1385, 1390 (9th Cir.1987). Applying that approach, the court had held that clerks of the court are immune from liability for refusing to accept an amended bankruptcy petition or for failing to send notice of entry of an order, because those functions are integral parts of the judicial process.

*Id.; Morrison v. Jones*, 607 F.2d 1269 (9th Cir.1979).

In *Antoine*, the Supreme Court reviewed the Ninth Circuit's decision that a court reporter was absolutely immune from liability for failing to produce a transcript of a federal criminal trial. The circuit court had held that the court reporter was absolutely immune, based on its conclusion that

the making of the official record of a court proceeding by a court reporter is part of the judicial function. That process is inextricably intertwined with the adjudication of claims.

*Antoine v. Byers & Anderson, Inc.*, 950 F.2d 1471, 1476 (9th Cir.1991).

■■■ The Supreme Court reversed. First, it considered whether court reporters are officials who have historically been accorded immunity at common law. Concluding that they are not, the Court then turned to a review of the function performed by court reporters to determine whether the function is of the type that should be protected by immunity:

We are also unpersuaded by the contention that our "functional approach" to immunity requires that absolute immunity be extended to court reporters because they are "part of the judicial function." The doctrine of judicial immunity is supported by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability. Accordingly, the "touchstone" for the doctrine's applicability has been "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." When judicial immunity is extended to officials other than judges, it is because their judgments are "functional[ly] comparab[le]" to those of judges—that is, because they, too, "exercise a discretionary judgment" as a part of their function.

The function performed by court reporters is not in this category. [C]ourt

reporters are required by statute to "recor[d] verbatim" court proceedings in their entirety. They are afforded no discretion in the carrying out of this duty[.] ... In short, court reporters do not exercise the kind of judgment that is protected by the doctrine of judicial immunity.

*Antoine*, 508 U.S. at 435–37, 113 S.Ct. 2167 (citations and footnotes omitted). Thus, in determining whether an action undertaken by a nonjudicial officer is a "judicial function" clothed in absolute quasi-judicial immunity, the Supreme Court considers whether a function that is part of the judicial process is functionally comparable to that normally performed by judges in that it involves the exercise of a discretionary judgment.[4] *See Woodard v. Mennella,* 861 F.Supp. 192, 196 (E.D.N.Y.1994); *Hoard v. Reddy,* 1998 WL 341821, *3 (N.D.Ill.1998), *aff'd on other grounds* 175 F.3d 531 (7th Cir.1999), 175 F.3d 1020 (7th Cir.1999) (table) ("*Antoine* has directed the inquiry away from the integral nature of the functions performed by auxiliary judicial personnel and toward the discretionary nature of those functions.").

In this case, debtor and her counsel seek to hold the trustee and her staff liable for two actions: scheduling the confirmation hearing and failing to give notice of that hearing date. Accordingly, we must decide whether those functions involve the exercise of discretionary judgment.

Since *Antoine* was decided, some courts have held that the scheduling of hearings is a judicial function. In *Rodriguez v. Weprin,* 116 F.3d 62, 66 (2d Cir.1997), the Second Circuit concluded that court clerks enjoyed quasi-judicial immunity from claims arising from alleged mismanage-ment of the court's calendar that delayed resolution of the appellant's appeal, because "[a] court's inherent power to control its docket is part of its function of resolving disputes between parties." Likewise, in *Wagshal v. Foster,* 28 F.3d 1249, 1252 (D.C.Cir.1994), the court held that a case evaluator in the Superior Court system performs judicial functions, including scheduling motions, and that those functions involve "substantial discretion" resulting in absolute immunity.

On the other hand, one court has held that the scheduling of hearings does not require the exercise of judicial discretion and therefore is not protected by absolute quasi-judicial immunity. *Samuel v. Michaud,* 980 F.Supp. 1381, 1403 (D.Idaho 1996), *aff'd* 129 F.3d 127 (9th Cir.1997) (table). The court did not explain its conclusion, merely saying that functions such as filing documents, scheduling hearings and transcribing court proceedings "are more administrative in nature, and generally do not require judicial discretion." *Id.*

We disagree with *Samuel* and conclude that the scheduling of hearings is a discretionary function that should be protected by immunity. Setting hearings involves management of the court's calendar, a discretionary function normally performed by judges that furthers the ultimate process of adjudicating disputes between parties. When that function is delegated to another person, whether a court employee or not, that person is absolutely immune from liability for exercising the judicial discretion inherent in performing the function. Because in this case there is no dispute that Curry was delegated the task of setting the confirmation hearings, she and Feder are abso-

4. The question of quasi-judicial immunity arises for at least two different types of defendants. Some defendants are persons or tribunals that themselves perform the function of resolving disputes between parties. The second group of defendants includes persons who perform individual functions related to the judicial process, such as court clerks and court reporters. It is this group that the Court was considering in *Antoine* and that is before us in this case. Under *Antoine*, it is not enough that these nonjudicial officers are intimately involved in the judicial process; the particular action for which they seek immunity must be one that requires the exercise of discretion. 508 U.S. at 436, 113 S.Ct. 2167.

lutely immune from liability for damages resulting from their performance of that task.

The answer is different for liability arising out of Curry and Feder's failure to send notice of the hearing. Sending notice of hearings does not involve the exercise of any discretion. The sending of notices of confirmation hearings is not an action normally performed by the judge. By rule, the task has been given to the court clerk, "or some other person as the court may direct." Fed.R.Bankr.P. 2002(b). The rule allows the court to delegate the noticing function to a third party, as it did in this case by delegating that function to the trustee. Sending a notice of a hearing is a purely ministerial act, for which no absolute immunity attaches.[5]

After oral argument in this case, with our permission the parties provided additional authorities on the issue of whether absolute immunity extended to court clerks.[6] Those authorities hold that court clerks are not absolutely immune from civil rights liability for ministerial acts that

are not taken at the direction of a judge. *See Williams v. Wood*, 612 F.2d 982 (5th Cir.1980); *McLallen v. Henderson*, 492 F.2d 1298 (8th Cir.1974); *McCray v. State of Maryland*, 456 F.2d 1 (4th Cir.1972); *Marty's Adult World of New Britain, Inc. v. Guida*, 453 F.Supp. 810 (D.Conn.1978). Those cases are consistent with our decision in this case that the trustee and her staff are not absolutely immune from liability with regard to their failure to give notice of the hearing. They do not detract from the conclusion that scheduling a hearing is discretionary rather than ministerial.

We conclude that the bankruptcy court erred in determining that Curry and Feder are not absolutely immune from liability for damages arising out of their scheduling of the confirmation hearing. It was correct in concluding that they are not absolutely immune from damages arising out of their failure to give notice of the hearing.

**B.  *Qualified quasi-judicial immunity***

Having determined that Curry and Feder are not absolutely immune from

---

**5.** In *Wilson v. Kelkhoff*, 86 F.3d 1438 (7th Cir.1996), the Seventh Circuit held that the prisoner review board was absolutely immune from liability for failing to give notice of a board review hearing. The court rejected the argument that, under *Antoine*, the board was not immune because the acts were not discretionary but instead "involved simple compliance with the law." 86 F.3d at 1444. The court explained that

*Antoine* stands for the proposition that ministerial acts unrelated to the function immunity is intended to protect are not covered by absolute immunity. *Antoine* and *Forrester [v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)] do not support the proposition that judicial acts that are part of the judicial function are excluded from absolute immunity because they could be characterized as nondiscretionary or even ministerial.

*Id.* The court noted

that conduct deserving of protection includes not only actual decisions, but also those mundane, even mechanical, tasks undertaken by judges that are related to the judicial process: "[T]he fact that the activity is routine or requires no adjudicatory skill renders that activity no less a judicial function."

*Id.* at 1444–45 (citation omitted).

*Wilson* is distinguishable from this case in that it involved defendants who are in the first group we described in note 4. The issue in *Wilson* was whether an adjudicatory body, which exercised judicial-type discretion, was immune from liability for actions it took in furtherance of that adjudicatory function.

In this case, the trustee falls within the second group described in note 4. In failing to send notice of the confirmation hearing, she was not performing " 'the function of resolving disputes between parties, or of authoritatively adjudicating private rights.' " *Antoine*, 508 U.S. at 435, 113 S.Ct. 2167. Because the trustee's duty in this case was merely to give notice and not to adjudicate, we need not decide whether *Wilson* is correct in holding that any function performed by an adjudicative body that relates to the adjudicative process is protected by absolute immunity.

**6.** The functions delegated to the trustee in this case are commonly performed by court clerks. Because it is the nature of the function and not the person performing it that is critical, we view cases addressing the immunity of court clerks as helpful to our resolution of this case.

liability for their failure to send notice of the hearing, we turn to the question of whether they enjoy qualified immunity for that action. The law is clear that the trustee is not immune from liability for her allegedly negligent administration. As the panel said in *Kashani:*

> It has long been established that a bankruptcy trustee is an officer of the appointing court. As an officer of the court, the trustee is entitled to a form of derivative judicial immunity from liability for actions carried out within the scope of the trustee's official duties. A trustee is entitled to such immunity only if the trustee is acting within the scope of authority conferred upon the trustee by the appropriate statute(s) or the court. While a trustee is allowed to make reasonable mistakes where discretion is allowed, *a trustee may be sued for intentional or negligent actions which amount to violations of the duties imposed upon the trustee by law.*

190 B.R. at 883 (citations omitted; emphasis supplied).

The trustee's duty to give notice of hearings is a duty imposed on the court clerk by law. Fed.R.Bankr.P.2002(b). The court has delegated that duty to the trustee. Under *Kashani* and *In re Cochise College Park*, 703 F.2d 1339 (9th Cir.1983), on which the panel in *Kashani* relied, the trustee and her staff are not immune from suit for alleged negligent actions that amount to violations of those duties. The Ninth Circuit has specifically rejected the reasoning of the cases on which the trustee relies for the proposition that a trustee is liable only for intentional acts. *See Cochise College Park*, 703 F.2d at 1357 n. 26. Thus, the bankruptcy court correctly concluded that the Curry and Feder are not immune from liability for failing to send notice of the hearing.

## CONCLUSION

In setting the confirmation hearing, the trustee and her staff were performing a judicial function that required the exercise of discretionary judgment. Therefore the bankruptcy court erred in granting leave to sue Curry and Feder in state court based on their scheduling of the confirmation hearing. The trustee and her staff enjoy neither absolute nor qualified immunity for their actions in failing to send notice of the hearing. Therefore the bankruptcy court did not err in granting leave to sue Curry and Feder in state court based on that action.

Accordingly, we REVERSE the court's orders to the extent they grant leave to sue Curry and Feder in state court for their actions in scheduling the confirmation hearing and otherwise AFFIRM.